UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE A. RANIOLO,

        Plaintiff,

v.                                  Case No.  8:09-cv-2458-T-24TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claims for widow's disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

In this case, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of July 31, 2007, the date on which she filed her application for Supplemental Security Income (SSI) payments.  Plaintiff does not seek review of that part of the ALJ's decision.  Rather, as indicated above, Plaintiff seeks review of the ALJ's findings with respect to the eligibility period for her claims for widow's disability benefits.  The import of Plaintiff's argument on appeal is that *if* the ALJ improperly determined the eligibility period, Plaintiff may be entitled to approximately thirty-three months' of widow's disability benefits

*if* the ALJ also improperly determined the date on the medical evidence revealed a positive

rheumatoid factor and thus disability based on the same.[1]

       Pertinent to Plaintiff's claims for widow's disability benefits are the following facts.

George R. Raniolo (the wage earner) was born on January 15, 1945.  (R. 155).  Plaintiff was

born on October 31, 1947.  *Id.*  Plaintiff married Mr. Raniolo on August 27, 1967.  *Id.*  The

couple had four children.  The youngest was born on November 8, 1981.  (R. 435).  The

marriage ended by divorce on April 14, 1993.  (R. 155).  Mr. Raniolo died on November 17,

1996.  *Id.*  Thereafter, Plaintiff filed an application for Title II mother's benefits on behalf of

her youngest son in November 1996.[2]  (R. 18).  Plaintiff received benefits on that application

through October 1997.[3]  *Id.*

       On November 23, 2004, Plaintiff filed an application for disability benefits on Mr.

Raniolo's earnings record (R. 88-90) and an application for disabled widow's benefits,[4]

alleging disability as of November 2, 2004.  Her claims were denied initially on December 27,

---

[1]The thirty-three month period begins with Plaintiff's alleged onset date of November 2, 2004, and runs through July 31, 2007, the date on which she was awarded SSI payments.

[2]The documents pertaining to these Title II benefits are not in the administrative file. However, the fact that Plaintiff received these benefits and the dates on which the benefits were received do not appear to be disputed.

[3]These Title II mother's benefits were payable to Plaintiff on account of her deceased former husband's Title II earnings because she had a child under age sixteen at the time of his death.  *See generally* 42 U.S.C. § 402(g); 20 C.F.R. § 404.341.  As the Commissioner notes, it does not appear that Plaintiff challenged the end to her entitlement of mother's benefits.

[4]That application is not included in the administrative record.

2004.  (R. 160).  Plaintiff requested reconsideration of that denial on February 21, 2005.[5]

(R. 399).  It is unclear whether any further action was taken on those claims.

On March 22, 2006, Plaintiff reapplied for disabled widow's benefits, alleging

disability as of November 2, 2004.  (R. 154-56).  That claim was denied initially and on

reconsideration.  (R. 60-61, 64-65).

On July 31, 2007, while a request for a hearing on the 2006 application was pending,

Plaintiff filed an application for SSI payments, alleging disability as of November 2, 2004, by

reason of arthritis in her hands and legs, depression, anxiety, and hepatitis B.[6]

An Administrative Law Judge (ALJ) conducted two hearings on the above matters.

The first hearing was held on October 16, 2008.  The second hearing was conducted on March

18, 2009.  Plaintiff was represented by counsel at both hearings.  The substance of each

hearing is discussed in turn.[7]

During the October 2008 hearing, the ALJ discussed a non-disability issue related to

the entitlement of disabled widow's insurance benefits, namely, the dates on which Plaintiff's

prescribed period with regard to the same began and ended.[8]  Apparently there was some

_____

[5]Both the ALJ (R. 18) and the Commissioner (Doc. 17 at 1) assert that no action was
taken on this claim after the initial denial.

[6]The SSI application and exhibits are not in the administrative record.

[7]Plaintiff was sixty years old at the time of the first administrative hearing and was
sixty-one years old at the time of the second administrative hearing.  Plaintiff has a BS degree
in sociology and anthropology and several hours toward a masters degree.  Her past relevant
work was as a teacher and substitute teacher.  Plaintiff has been receiving survivor's benefits
under her former husband's account since she turned sixty.  (R. 436).

[8]The ALJ referred to this as "jurisdictional matters."  (R. 405).

confusion within the SSA itself over the date on which the prescribed period ended in Plaintiff's case and an audit on the matter was done.  In particular, the entitlement period for widow's disability benefits requires that the claimant's disability began not later than seven years after the insured wage earner died or seven years after the claimant was last entitled to mother's benefits, whichever occurred last.  Further, the ALJ advised Plaintiff's counsel to research the matter and submit a memorandum on his findings, and they would discuss the issue again at the next administrative hearing.  (R. 405-13).  The ALJ then took testimony from Plaintiff's son, James Raniolo, D.O., because he was not going to be available to testify at the next hearing.

Dr. Raniolo gave a rather detailed account of his mother's medical condition.  He knew that she had long-standing Hepatitis B, which left her fatigued, lethargic, and with occasional abdominal pains.  Additionally, she had osteoarthritis for years, which caused pain in her hands and legs.  As early as 2003, she was sleeping ten to fourteen hours a day and complained of constant pain in her arms and legs.  She tested positive for rheumatoid arthritis in 2003 and began seeing a rheumatologist in 2004.  Her treatment was complicated by her hepatitis.  Medication and therapy have helped to reduce the pain and she became somewhat more energetic and engaged in more daily activities.  However, her medication caused abdominal pain and bloating, as well as diarrhea.  Later she suffered from severe skin rashes.  Plaintiff was able to get by working as a teacher of very challenging students in what she describes as a "very challenging school."  On November 2, 2004, a student masturbated in front of her while other students prevented her from calling for help.  She was extremely traumatized and terribly upset.  She began psychiatric care and is taking numerous

4

medications.  She was unable to return to that work setting or any other work.  By her son's

account, the incident left her a near recluse in her house.  She stays there most of the day and

avoids circumstances where she is around children.  She suffers from nightmares and will

occasionally panic and someone has to spend the night with her.  According to the son, her

rheumatoid arthritis has progressed.  Because of her hepatitis, she is unable to take some

medications which would likely help.  She also suffers from low back pain and hip pain and is

unable to sit for long periods of time.  She has received injections in her hips and hand, which

have helped.  According to the son, Plaintiff's primary issue is that she is unable to sit or stand

for long periods and her hands are essentially falling apart.  She cannot grip things, manipulate

things, lift heavy pots or pans, or clean things.  She has fallen numerous times in the house.

As a consequence, the family has made many renovations to accommodate her condition,

including replacing door knobs with lever handles, taking away all heavy pots and pans,

installing non-stick flooring, lowering cabinets, and placing guard rails in the shower.  By Dr.

Raniolo's account, the Plaintiff is no longer the happy, gregarious, outgoing person that she

once was.  (R. 414-21).

     The second administrative hearing was conducted in March 2009.  Plaintiff testified

that she began receiving widow's benefits at the age of sixty.  She stopped working in 2004, at

which time she was teaching an ESE class at the Carver Center in Hillsborough County,

Florida.  She dealt mainly with extremely emotionally disturbed children.  She had done that

for about eight or nine years.  Her students were mainly middle school age children.  She

began having physical problems in 2003.  It was harder for her to get upstairs, to move her

books, and to write on the blackboard.  Her principal made a number of accommodations and

moved her downstairs and allowed a custodian to help her move things.  By the fall of 2004, she was unable to carry books or move desks around in the classroom.  She had to get up at 5:00 a.m. just to get her bones working so she could get to class.  After work she would come home and just collapse.  She lost her assistant in 2004, which made the job more difficult.  By her account, the kids sensed her physical problems and became more difficult to control.  On November 2, 2004, she was confronted by a very large fourteen year old boy who cornered her in the classroom, threatened her, and started playing with his genitals.  She was trapped for about forty minutes before she could get help.  She was never able to return to the classroom after that incident.

Since the attack, she seldom leaves her apartment and when she does, she rarely goes out alone.  She is terrified of driving in neighborhoods.  By her account she lives in fear and suffers nightmares, but as long as she is home, she is happy.

Regarding physical problems, she was having difficulty standing at the blackboard and she began sitting and writing with very fat chalk.  She made an appointment with an arthritis specialist who found her rheumatoid factor to be "off the chart."  Her condition progressed quickly.  Because she also suffered from hepatitis, she was unable to take some of the better rheumatoid medications.

Because of her physical difficulties, a number of alterations were made in the home. The cabinets were lowered because she could not reach, she has replaced her glass with plastic items, and has changed door knobs to lever type handles.  She estimated that, in 2004, she could stand/sit for ten to twenty minutes.  At present, she does everything while seated.  In 2004, she could sit for five to thirty minutes but she would get antsy.  By her account, she now

has major problems with concentration and she is unable to stay on task.  She used to be a good bridge player, but now cannot follow the hands.  Her psychiatric medication makes her "crazy;" it effects her concentration and makes her jittery and nervous.  (R. 433-46).  A vocational expert was present but did not testify.

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.[9]

By his decision of April 24, 2009, the ALJ entered a partially favorable decision, finding that Plaintiff was disabled as of July 31, 2007, the date of her SSI application, but she was not disabled prior to the expiration of her prescribed period for entitlement to disabled widow's insurance benefits because her period of eligibility ended on October 30, 2004, and thus predated her alleged onset date of November 2, 2004.  (R. 18-26).  The Appeals Council denied Plaintiff's request for review after considering the written contentions from her attorney, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to disabled widow's benefits, a claimant must establish, among other things, that she is between 50 and 60 years old,[10] that she is the widow of a wage earner who died fully insured, and that she has physical or mental impairments result in disability as

---

[9]As indicated by Plaintiff, in light of the partially favorable decision, the medical evidence that is potentially relevant to this appeal relates to the period of time predating that of August 31, 2007.

[10]Widows that are 60 years old or older automatically receive benefits, regardless of disability, if all other elements to entitlement are established.  *See* 20 C.F.R. § 404.335(c).

defined in § 404.1505.[11]  *See* 20 C.F.R. § 404.335.  Pertinent to this appeal, a claimant must also establish that her disability started not later than seven years after the wage earner died or seven years after she was last entitled to mother's benefits, whichever occurred last.  *Id.* at § 404.335(c).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).

--------

[11]The definition for disability for widow's benefits is the same as for the standard disability case and the five step sequential evaluation process is applicable to widow's cases. *Patton v. Astrue, No.* 2:06-cv-595-FtM-29DNF, 2008 WL 906694, at *1 n.3 (M.D. Fla. Mar. 31, 2008).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal.  By her first claim, Plaintiff argues that the ALJ erred by finding that her eligibility for disabled widow's benefits ended on October 31, 2004.  Although the ALJ determined that she was last entitled to mother's benefits on October 31, 1997, and thus her eligibility period for disabled widow's benefits ended on October 31, 2004, Plaintiff urges that he calculated that date incorrectly.  According to Plaintiff, she was last entitled to mother's benefits on November 31, 1997, and thus her eligibility for benefits ended on November 31, 2004.  Plaintiff urges that is significant given her alleged onset date of disability of November 2, 2004.  The gist of Plaintiff's argument is that the ALJ misconstrued the plain meaning of 20 C.F.R. § 404.340(e), which states that mother's benefits end the month before the month in which there is no longer a child of the

insured who is under the age of sixteen.[12]  Plaintiff contends that the ALJ read the provision to mean that mother's benefits terminate in the month preceding the month in which the youngest child attains the age of sixteen, whereas Plaintiff urges that, to lose entitlement to mother's benefits, there must be a month in which the child is never under the age of sixteen that month (i.e., "[i]f the child is under age sixteen for even one day in the month, then that month is not a 'month in which there is no child under age sixteen.'").  In terms of legal support, Plaintiff urges that the Social Security Administration's Program Operations Manual System cited by the ALJ, namely, POMS GN 00208.030, uses the exact same language as the regulations – it states that mother's benefits terminate the month before the month in which there is no child under age sixteen entitled to child's benefits, and thus is consistent with the analysis that entitlement to mother's benefits does not end the month before the child's sixteenth birthday but ends at the end of the month in which the child turns age sixteen.  In further support, Plaintiff also cites to *Sullivan v. Weinberger*, 493 F.2d 955 (5th Cir. 1974), and *Clark v. Matthews*, 420 F.Supp. 1050 (D. M.D. 1976).  (Doc. 14 at 6-10).

The Commission counters that the ALJ properly determined that the prescribed period at issue required Plaintiff to demonstrate her disability started no later than seven years after she was last entitled to mother's benefits, Plaintiff was last entitled to mother's benefits in October 1997 (not in November 1997 as urged by Plaintiff), and thus the seven year period ended on October 31, 2004 (and not November 30, 2004, as urged by Plaintiff).  The Commissioner also urges that Plaintiff's reliance on *Sullivan* is misplaced because the court in

_____

[12]Plaintiff also cites to 20 C.F.R. § 404.352, noting that child's benefits continue until the month before the child turns eighteen.  (Doc. 14 at 7-8).

that case did not address the issue of when mother's benefits terminate.  Rather, at issue there

was the eligibility period requiring disability be established no later than seven years after the

insured wage earner died.  As for *Clarke*, the Commissioner urges that, while it supports

Plaintiff's argument, the court there permitted an 85-month period after the plaintiff's

mother's benefits were terminated, which is inconsistent with the SSA and regulations as they

permit only a period of 84 months after the terminating event.  Further, the Commissioner

contends that the ALJ's determination was consistent with the Program Operations Manual

System (POMS) RS 00208.030, which states that mother's benefits will terminate with the

month before the month when no child is under age sixteen.  (Doc. 17).

By her second claim, Plaintiff argues that substantial evidence does not support the

ALJ's finding that "evidence of a positive rheumatoid factor did not appear until December

2005."  Plaintiff proffers the results of blood work obtained in February 2004 and a doctor's

notation of a high rheumatoid arthritis factor in May 2004 demonstrate otherwise.  Without

explaining how the same results in a finding of disability, Plaintiff urges that the

Commissioner's decision should be reversed and benefits awarded.  However,

notwithstanding her argument, Plaintiff concedes that this challenged finding by the ALJ is

only relevant if the ALJ's finding on the eligibility period for disabled widow's benefits was

in error.  (Doc. 14 at 10-11).  The Commissioner does not address Plaintiff's second claim.

Upon careful consideration and for the reasons that follow, I conclude that the ALJ

correctly determined the eligibility date for disabled widow's benefits.  In order to be entitled

to Title II disabled widow's benefits, the claimant must show that she is the widow (or the

surviving divorced wife) of the deceased wage earner, has attained the age of fifty, is

unmarried, and has a disability that began before the end of the prescribed period.  42 U.S.C.

§ 402(e); 20 C.F.R. § 404.335.  At issue on this appeal is the prescribed period.  According to

the ALJ the prescribed period ended October 31, 2004, but Plaintiff contends that it ended on

November 30, 2004.

As indicated above, the prescribed period for entitlement to disabled widow's

benefits is defined as the later of seven years after the wage earner died or seven years after

the claimant was last entitled to mother's benefits or widow's benefits based upon disability.

20 C.F.R. § 404.335(c)(1).  Here, Plaintiff's former husband died on November 17, 1996, and

thus the seven year period ran on November 17, 2003.  Plaintiff alleged an onset date of

disability of November 2, 2004.  As such, Plaintiff is not eligible for widow's disability

benefits based on that date.  Instead, to be entitled to widow's disability benefits, Plaintiff

must demonstrate that her disability started no later than seven years after she was last entitled

to mother's benefits.  *See* 42 U.S.C. § 402(e)(4); 20 C.F.R. § 404.335(c)(1).  Here, Plaintiff's

youngest son was born on November 8, 1981, (R. 435), and thus was fifteen years old when

her former husband died on November 17, 1996.  Although not in the administrative record, it

appears undisputed that Plaintiff filed an application for Title II mother's benefits on behalf of

her youngest son in November 1996 and received benefits on that application through October

1997.  As noted by the Commissioner, there is no evidence that Plaintiff disputed that her

mother's benefits terminated on October 31, 1997.

Under the regulatory framework that address mother's insurance benefits, a

claimant's entitlement to benefits "ends with the month before the month in which one of the

following events first occurs: . . . [t]here is no longer a child of the insured who is under age

12

16 . . .” 20 C.F.R. § 404.341(b)(2).  As noted, Plaintiff contends that “to lose entitlement to mother's benefits, there must be a month in which the child is never under age 16 in that month.  If the child is under age 16 for even one day in the month, then that month is not a ‘month in which there is no child under age 16.’” (Doc. 14 at 7-8).  Thus, according to Plaintiff, even though her benefits were terminated October 31, 1997,[13] because her youngest son did not turn sixteen until November 8, 1997, she was entitled to benefits on a showing of disability on or before November 30, 2004.  While Plaintiff's argument is not wholly without merit and appears to find support in *Clarke*, if that calculation were accepted it would, as urged by the Commissioner and found by the ALJ, be contrary to the plain language of the regulation in that it would exceed by one month the seven year (or eighty-four month) entitlement period set forth therein.  *See* 20 C.F.R. § 404.335(c)(1) (providing for an entitlement period of seven years); *cf.* POMS RS 00201.002(c) (providing that, in retirement benefits context, the month before a claimant's death occurs is not an entitlement month because a claimant must be entitled to retirement benefits for an entire month to receive benefits for that month).  And, as noted by the Commissioner, it is an established principle that an agency's interpretations of its own regulations is generally accorded great deference by a reviewing court.  *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citations omitted).  Further, Plaintiff's reliance on *Sullivan* is inapposite and the decision is *Clarke* is not controlling.  While there is a certain element of arbitrariness in the result dictated here, I am unable to conclude that it was in error.

---

[13]Again, it does not appear that Plaintiff challenged that determination and Plaintiff does not contend otherwise on appeal.

13

In light of this finding, Plaintiff's second claim need not be addressed.  However, should the district court disagree with my finding on the first claim, it is recommended that the proper remedy would be to remand for further consideration of the medical evidence and to determine whether Plaintiff was disabled prior to the end of her eligibility period for disabled widow's benefits.  On the instant pleadings and given the administrative record, it would be improper to reverse and remand for an award of benefits.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
15th day of December 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Susan C. Bucklew, United States District Judge
Counsel of Record